UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MARK PATRICK PHILLIPS,

                Plaintiff,

v.                                                                                          6:17-CV-0571
                                                                                            (WBC)
COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

APPEARANCES:                                                OF COUNSEL:

LAW OFFICES OF STEVEN R. DOLSON           STEVEN R. DOLSON, ESQ.
  Counsel for Plaintiff
126 North Salina St., Ste. 3B
Syracuse, NY 13202

U.S. SOCIAL SECURITY ADMIN.                    DANIELLA CALENZO, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

      This matter was referred to me, for all proceedings and entry of a final judgment, pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1 and the consent of the parties. (Dkt. Nos. 4, 5.).

      Currently before the Court, in this Social Security action filed by Mark Patrick Phillips ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings. (Dkt. Nos. 10, 14.) For the reasons set forth below, Plaintiff's motion is denied and Defendant's motion is granted.

## I.   RELEVANT BACKGROUND

### A.   Factual Background

Plaintiff was born in 1974. (T. 61.) He completed three years of college. (T. 162.) Generally, Plaintiff's alleged disability consists of multiple sclerosis ("MS") and depression. (T. 161.) His alleged disability onset date is January 1, 2009. (T. 60.) His date last insured is March 31, 2015. (T. 13.) He previously worked as an electronic products maintenance mechanic. (T. 21, 162.)

### B.   Procedural History

On February 27, 2014, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II, and Supplemental Security Income ("SSI") under Title XVI, of the Social Security Act. (T. 60.) Plaintiff's applications were initially denied, after which he timely requested a hearing before an Administrative Law Judge ("the ALJ"). On October 6, 2015, Plaintiff appeared before the ALJ, F. Patrick Flanagan. (T. 28-59.) On November 18, 2015, ALJ Flanagan issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 10-27.) On April 5, 2017, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-4.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C.   The ALJ's Decision

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law. (T. 15-23.) First, the ALJ found Plaintiff met the insured status

requirements through March 31, 2015 and Plaintiff had not engaged in substantial gainful activity since January 1, 2009.  (T. 15.)  Second, the ALJ found Plaintiff had the severe impairments of MS and affective disorder.  (*Id.*)  Third, the ALJ found Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1.  (T. 16.)  Fourth, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform less than a full range of sedentary work.  (T. 17-18.)[1]  The ALJ found Plaintiff could lift and/or carry ten pounds occasionally, sit for six hours in an eight hour day, and stand and/or walk for two hours in an eight hour day.  (T. 17.)  The ALJ found Plaintiff should avoid exposure to temperatures higher than 80 degrees.  (*Id.*)  The ALJ found Plaintiff could understand, remember, and carry out simple instructions/tasks, maintain attention and concentration to perform simple tasks, accept instructions from supervisors, work cooperatively with coworkers, and greet customers and public.  (*Id.*)  The ALJ found Plaintiff was capable of no more than occasional decision making and was not capable of a job involving interactions requiring negotiation, conflict resolution, working as part of a team, or fast paced productions rate tasks.  (T. 17-18.)  Fifth, the ALJ determined Plaintiff was incapable of performing his past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform.  (T. 22.)

## II.     THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.     Plaintiff's Arguments

---

[1] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.  20 C.F.R. §§ 404.1567(a), 416.967(a).

Plaintiff makes two separate arguments in support of his motion for judgment on the pleadings. First, Plaintiff argues the ALJ failed to apply the treating physician rule and therefore the RFC was not based on substantial evidence. (Dkt. No. 10 at 4-9 [Pl.'s Mem. of Law].) Second, and lastly, Plaintiff argues the ALJ failed to find a significant number of jobs exists in the national economy Plaintiff could perform. (*Id.* at 9-11.)

### B.      Defendant's Arguments

In response, Defendant makes two arguments. First, Defendant argues the ALJ properly weighed the opinion of Plaintiff's treating physician. (Dkt. No. 14 at 9-15 [Def.'s Mem. of Law].) Second, and lastly, Defendant argues substantial evidence supported the ALJ's finding that Plaintiff could perform a significant number of jobs. (*Id.* at 15-18.)

## III.    RELEVANT LEGAL STANDARD

### A.      Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.    Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this

sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV. ANALYSIS

### A. Treating Source, Taseer Minhas, M.D.

The Second Circuit has long recognized the treating physician rule set out in 20 C.F.R. §§ 404.1527(c) and 416.927(c)[2]. " '[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.' " *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)). There are situations where the treating physician's opinion is not entitled to controlling weight, in which case the ALJ must "explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion

---

[2] Effective March 27, 2017, many of the Regulations cited herein have been amended, as have SSRs cited herein. Nonetheless, because Plaintiff's social security application was filed before the new Regulations and SSRs went into effect, the Court reviews the ALJ's decision under the earlier regulations and SSRs.

with the remaining medical evidence; and (4) whether the physician is a specialist.' " *Greek*, 802 F.3d at 375 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)). However, "[w]here an ALJ's reasoning and adherence to the Regulations is clear, she is not required to explicitly go through each and every factor of the Regulation." *Blinkovitch v. Comm'r of Soc. Sec.*, No. 3:15-CV-1196, 2017 WL 782979, at *4 (N.D.N.Y. Jan. 23, 2017), report and recommendation adopted by 2017 WL 782901 (N.D.N.Y. Feb. 28, 2017) (citing *Atwater v. Astrue*, 512 F. App'x. 67, 70 (2d Cir. 2013)). After considering these factors, "the ALJ must 'comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion.' " *Greek*, 802 F.3d at 375 (quoting *Burgess*, 537 F.3d at 129). "The failure to provide 'good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand.' " *Greek*, 802 F.3d at 375 (quoting *Burgess*, 537 F.3d at 129-130).

Plaintiff's treating neurologist, Dr. Minhas, treated Plaintiff from 2011 through 2014. (T. 232.) On August 4, 2014, Dr. Minhas completed a "Medical Examination for Employability Assessment, Disability Screening, and Alcoholism/Drug Addiction Determination" form for the New York State Office of Temporary and Disability Assistance. (T. 251-252.) Dr. Minhas indicated Plaintiff was "moderately limited" in his ability to: walk; stand; lift, carry; push, pull, bend; and do "stairs or other climbing." (T. 252.) He indicated Plaintiff had "no evidence of limitations" in his ability to sit, see, hear, or speak. (*Id.*)

The ALJ afforded Dr. Minhas's opinion "some weight." (T. 20.) The ALJ acknowledged Dr. Minhas as Plaintiff's treating source, and a specialist; however, the ALJ stated there was no evidence in the medical record to support the opined bending

limitations.  (*Id.*)  The ALJ also noted Plaintiff told Dr. Minhas he had no problems using stairs.  (*Id.*)  The ALJ concluded that the remainder of Dr. Minhas's opinion was supported by the evidence in the record and consistent with Plaintiff's reported activities of daily living.  (*Id.*)

Plaintiff asserts Dr. Minhas's opinion was entitled to controlling weight because the opinion was well supported and because there were no other contrary medical opinions in the record.  (Dkt. No. 10 at 7 [Pl.'s Mem. of Law].)[3]  Here, the ALJ adopted the majority of Dr. Minhas's opinion and only rejected the doctor's opinion that Plaintiff was limited in his ability to bend and climb stairs.  (T. 20.)  The ALJ provided good reasons for rejecting bending and climbing limitations.  Indeed, Plaintiff indicated he was able to go up and down stairs without any problem.  (T. 234.)  Further, as stated by the ALJ, there was no suggestion in Plaintiff's medical records that he had limitations for bending.  (T. 20, T. 232-238, 254-258, 260-262.)  Therefore, the ALJ provided good reasons for rejecting the doctor's bending and climbing limitations.

In the alternative, any error the ALJ may have made in failing to include bending and climbing limitations in the RFC determination was harmless.  At step five the ALJ determined Plaintiff could perform the occupations of addresser and charge account clerk.  (T. 22.)  According to the Dictionary of Occupational Titles ("DOT"), neither occupation requires bending (kneeling, stooping, and/or crouching)[4] or climbing.  DOT 209.587-010, DOT 205.367-014.  Because the occupations of addresser and charge

---

[3]   Of note, Plaintiff does not question the ALJ's mental RFC determination.
Bending may include: to bend the legs alone (kneel); to bend the spine alone (stoop) or bend both the spine and legs (crouch).  SSR 85-15.  The DOT provides activity levels for stooping, kneeling, and crouching.

account clerk do not require bending or climbing, any error in failing to include a limitation in the RFC was harmless.

Plaintiff also asserts the ALJ failed to address all of the factors outlined in 20 C.F.R. §§ 404.1527(c) and 416.927(c) in his analysis of Dr. Minhas's opinion. (Dkt. No. 10 at 8 [Pl.'s Mem. of Law].) As stated herein, "[w]here an ALJ's reasoning and adherence to the Regulations is clear, she is not required to explicitly go through each and every factor of the Regulation." *Atwater*, 512 F. App'x. at 70. To be sure, the ALJ did not explicitly go through each factor outlined in the Regulation; however, the ALJ's adherence to the Regulations was clear. The ALJ acknowledged Dr. Minhas as Plaintiff's treating neurologist and a specialist. (T. 20.) The ALJ also thoroughly summarized Dr. Minhas's treatment notations, and treatment notations from other providers, concerning Plaintiff's MS. (T. 18-20.) In his evaluation of Dr. Minhas's opinion, the ALJ cited evidence in the record which he determined was inconsistent with the doctor's bending and climbing limitations. (T. 20.) Therefore, the ALJ did not commit legal error because his reasoning and adherence to the Regulations was clear.

Plaintiff asserts the ALJ discounted Dr. Minhas's opinion, which was the only medical source statement in the record, and therefore the ALJ based his RFC determination on bare medical findings. (Dkt. No. 10 at 8 [Pl.'s Mem. of Law].) To be sure, the ALJ is "not permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion or for any competent medical opinion." *Greek,* 802 F.3d at 375. However, the Second Circuit has held that where, "the record contains sufficient evidence from which an ALJ can assess the [claimant's] residual functional capacity," *Tankisi v. Comm'r of Soc. Sec.,* 521 Fed.App'x. 29, 34 (2d Cir. 2013)

(summary order), a medical source statement or formal medical opinion is not necessarily required, *see id.*; *cf Pellam v. Astrue*, 508 Fed.Appx. 87, 90 (2d Cir. 2013) (summary order) (upholding ALJ's RFC determination where he "rejected" physician's opinion but relied on physician's findings and treatment notes). *Monroe v. Comm'r of Soc. Sec.,* 676 F. App'x 5, 8 (2d Cir. 2017).

Contrary to Plaintiff's assertion, the ALJ did not reject the entirety of Dr. Minhas's opinion. The ALJ adopted the majority of the doctor's opinion and only rejected his opined limitations regarding bending and climbing. Therefore, the ALJ formulated his RFC based on Dr. Minhas's statement, as well as objective evidence in the record, and Plaintiff's testimony. As further outlined below, substantial evidence in the record supported the ALJ's RFC determination.

Plaintiff argues in the alternative, Dr. Minhas's "moderate" limitations did not support the ALJ's RFC determination because the term "moderate" was not defined on the form and therefore the ALJ was obligated to recontact Dr. Minhas for clarification. (Dkt. No. 10 at 9 [Pl.'s Mem. of Law.]) To be sure, the form completed by Dr. Minhas did not define the term "moderate." (T. 252.) The form provided three categories of functional limitations: no evidence of limitations; moderately limited; and very limited. (*Id.*) Although the term moderate was not defined, Dr. Minhas's statement, along with other substantial evidence in the record, supported the ALJ's RFC determination for a reduced range of sedentary work.

In general, courts have held that although a medical opinion may use terminology that, on its face, is vague, such language does not render the opinion useless in all situations. *Zongos v. Colvin*, No. 5:12-CV-1007, 2014 WL 788791, at *10 (N.D.N.Y.

Feb. 25, 2014) ("[W]hether an [ALJ's] reliance on a consultative examiner's vague opinion is reversible error is contextual rather than *per se.* Reviewing courts must weigh the impact of vague opinion in its unique factual circumstance.").

Courts have held that a medical opinion was not impermissibly vague where the conclusion was "well supported by [the doctor's] extensive examination." *Waldau v. Astrue,* No. 5:11-CV-925, 2012 WL 6681262, at *4 (N.D.N.Y. Dec. 21, 2003); *Mauzy v. Colvin*, No. 5:12-CV-866, 2014 WL 582246, at *9 (N.D.N.Y. Feb. 13, 2014). Courts have also held that medical source statements from examiners which provide vague language may be rendered "more concrete" by the facts in the underlying opinion and other opinion evidence in the record. *Davis v. Massanari*, No. 00-CV-4330, 2001 WL 1524495, at *8 (S.D.N.Y. Nov. 29, 2001) (a consultative examiner's opinion was not too vague where "the facts underlying that opinion and the other medical opinions in the record lend it a more concrete meaning"); *see Sweeting v. Colvin,* No. 12-CV-0917, 2013 WL 5652501, at *8 (N.D.N.Y. Oct. 15, 2013) (plaintiff's contention that consultative examiner's use of the term "moderate" in his opinion was vague lacked merit as consultative examiner made specific findings based on physical examination of plaintiff); *Melton v. Colvin*, No. 13-CV-6188, 2014 WL 1686827, at *13 (W.D.N.Y. Apr. 29, 2014) (substantial evidence supported ALJ's RFC determination that plaintiff could perform sedentary work where consultative examiner opined plaintiff had moderate limitations in lifting and carrying and other objective evidence in the record to supported this determination). Here, the ALJ's determination that Plaintiff could perform sedentary work was supported by Dr. Minhas's opinion, objective evidence in the record, and Plaintiff's testimony.

Sedentary work generally requires sitting for a total of about six hours in an eight hour workday. SSR 96-6p (S.S.A. July 2, 1996). There is no question from the record that Plaintiff was able to perform the sitting requirements of sedentary work. Dr. Minhas opined Plaintiff had no limitations in his ability to sit. (T. 252.) Plaintiff stated in his Function Report that he had no problems sitting. (T. 173.) At the hearing Plaintiff testified he was currently working at a position where they allowed him to sit to perform his duties. (T. 38.) Therefore, the opinion of Dr. Minhas, together with Plaintiff's testimony, supported the ALJ's determination that Plaintiff could perform the sitting requirements of sedentary work.

The overall evidence in the record supported the ALJ's determination that Plaintiff could perform the standing/walking requirements of sedentary work. Sedentary work required standing/walking generally no more than about two hours total in an eight hour workday. SSR 96-9p. Plaintiff testified being on his feet and walking was difficult for him (T. 45) and Dr. Minhas's opined Plaintiff had moderate limitations in his ability to stand and/or walk (T. 252). The ALJ took Plaintiff's testimony and Dr. Minhas's opinion into consideration and limited Plaintiff to no more than two hours of walking/standing in a workday. Objective medical observations in the record supported the ALJ's determination as well. Dr. Minhas observed Plaintiff had a normal gait with "some gait ataxia" on one occasion (T. 233) and noted a normal gait on other visits (T. 237, 253, 256). Another provider noted Plaintiff's gait had some extensor spasticity, some scissoring, and he wobbled with Romberg, but did not fall. (T. 261.) At subsequent appointments the provider noted Plaintiff had "some gait instability"; however, described Plaintiff's gait as "fairly normal." (T. 262.) The ALJ's RFC determination took into

account Plaintiff's difficulty walking and/or standing and reasonably limited him to perform those activities for no more than two hours in a workday. Therefore, despite complaints of instability, substantial evidence supported the ALJ's determination Plaintiff could perform the standing/walking requirements of sedentary work.

Substantial evidence further supported the ALJ's determination that Plaintiff perform the lifting and carrying requirements of sedentary work. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. 20 C.F.R. §§ 404.1567(a), 416.967(a). Plaintiff testified at the hearing he was currently working and lifted and carried "industrial sized" bags of flour and sugar approximately half an hour out of his workday. (T. 39.) Dr. Minhas opined Plaintiff had moderate limitations lifting and carrying. (T. 252.) Therefore, the doctor's opinion, and Plaintiff's testimony, supported the determination Plaintiff could perform the minimal lifting requirements of sedentary work.

The ALJ was not obligated to recontact the doctor for further clarification because the record contained sufficient evidence, as outlined above, for the ALJ to make a determination. *See Janes v. Berryhill*, 710 F. App'x 33 (2d Cir. 2018) (ALJ not required to develop record any further when the evidence already presented is adequate for the ALJ to make a determination); *see Morris v. Berryhill*, No. 16-2672-CV, 2018 WL 459678, at *2 (2d Cir. Jan. 18, 2018) (duty to recontact arises only if the ALJ lacks sufficient evidence in the record).

Overall, the ALJ adhered to the treating physician rule and provided good reasoning for rejection a portion of the treating source's opinion. The ALJ's RFC

determination for less than a full range of sedentary work was supported by Dr. Minhas's medical opinion, Plaintiff's testimony, and objective medical evidence in the record.  The ALJ was not required to recontact Dr. Minhas because there was sufficient evidence in the record upon which he could make his determination.

### B. The ALJ's Step Five Determination

At step five in the sequential evaluation, the ALJ was required to perform a two part process to first assess Plaintiff's job qualifications by considering his physical ability, age, education, and work experience, and then determine whether "other work" existed in the national economy he could perform.  *See* 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 404.1520(f), 416.920(f); *Heckler v. Campbell,* 461 U.S. 458, 460, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983).  "Other work" must exist in "significant numbers in the national economy (either in the region where [Plaintiff] live[s] or in several regions in the country)."  20 C.F.R. §§ 404.1560(c)(1)-(2), 404.1566, 416.960(c)(1)-(2), 416.966.

Neither the Regulations nor the Social Security Rulings define "significant number."  *Koutrakos v. Colvin,* No. 3:13-CV-1290, 2015 WL 1190100, at *20-22 (D.Conn. Mar. 16, 2015).  Courts have held that a "significant number" of jobs is "fairly minimal."  *Hamilton v. Comm'r of Soc. Sec.*, 105 F. Supp. 3d 223, 229 (N.D.N.Y. 2015) (citing *Rosa v. Colvin*, No. 12-CV-0170, 2013 WL 1292145, at *9 (N.D.N.Y.  March 27, 2013)).  Courts have held that numbers varying from 9,000 upwards constituted "significant."  *See Hoffman v. Asture*, No. 09-CV-5252, 2010 WL 1138340, at *15 (W.D.Wash. Feb. 8, 2010) (9,000 jobs in the national economy was found significant) (*citing Johnson v. Chater*, 108 F.3d 178, 180 (8th Cir. 1997) (10,000 jobs in the national economy was found significant)).

14

At step five, the ALJ determined Plaintiff was not disabled because he could perform the occupations of charge account clerk (DOT 205.367-014) and addresser (DOT 209.587-010). (T. 22, 57.) In his written decision, the ALJ stated the vocational expert testified that 2,254 charge account clerk jobs and 1,084 addresser jobs existed in the national economy. (T. 22.) Plaintiff asserts these jobs do not exist in significant numbers in the national economy. (Dkt. No. 10 at 10 [Pl.'s Mem. of Law].)

To be sure, a total of 3,338 may not equate to a significant number of jobs. However, the ALJ's written determination contained a typographical error. Although the ALJ's written decision stated there were 1,084 addresser jobs in the national economy, the vocational expert testified at the hearing there were "11,084 addresser jobs" in the national economy. (T. 22, 57.) A total of 13,338 constitutes a significant number of jobs.

Defendant asserts the ALJ's written decision contains a "scrivener's error" and remand is not necessary. (Dkt. No. 14 at 17 [Def.'s Mem. of Law]); *see Wearen v. Colvin*, No. 13-CV-6189, 2015 WL 1038236, at *12 (W.D.N.Y. Mar. 10, 2015). Plaintiff maintains Defendant's argument must fail because it is unclear which of the two numbers was the figure provided by the vocational expert. (Dkt. No. 10 at 10 [Pl.'s Mem. of Law].) However, contrary to Plaintiff's assertion, it is clear the 11,084 number provided at the hearing was correct and the ALJ's written decision contained a typographical error. As stated by the Defendant, the hearing testimony was transcribed and proofread by two individuals who certified that the document was a "true and complete transcription." (Dkt. No. 14 at 17 [Def.'s Mem. of Law], referring to T. 69.)

Therefore, remand is not necessary because the number provided at the hearing was the correct number of occupations and the ALJ's written decision contained an error.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 10) is

**DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 14) is

**GRANTED**; and it is further

**ORDERED** that Defendant's unfavorable determination is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated:     April 11, 2018

_____
William B. Mitchell Carter
U.S. Magistrate Judge